## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ALEJANDRO DOS SANTOS, III,

Plaintiff,

v.                                                                          5:22-CV-1102
                                                                            (MAD/ATB)
THE SYRACUSE POLICE DEPT., et al.

Defendants.

ALEJANDRO DOS SANTOS, III,

Plaintiff,

v.                                                                          5:22-CV-1164
                                                                            (MAD/ATB)
JARRETT WOODFORK., et al.

Defendants.

ALEJANDRO DOS SANTOS, III,  Plaintiff, Pro Se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

The Clerk sent to this court, for review, two related civil rights complaints,
together with motions to proceed in forma pauperis ("IFP"), filed by plaintiff Alejandro
Dos Santos, III.  (Case No. 5:22-CV-1102 ("No. 1102"), Dkt. Nos. 1, 2; Case No.
5:22-CV-1164 ("No. 1164"), Dkt. Nos. 1, 2).  The court has reviewed the pro se
plaintiff's IFP applications and finds that plaintiff has demonstrated sufficient
economic need to meet the financial criteria for proceeding IFP.

However, in addition to determining whether plaintiff qualifies to proceed IFP,
the court must also consider the sufficiency of the allegations set forth in the complaints
in light of 28 U.S.C. § 1915, which provides that the court shall dismiss a case at any
time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state

a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process, as well as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327.  The court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering *sua sponte* dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond.  However, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).  In assessing whether a complaint states a plausible claim, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference.  *See,*

2

*e.g.*, *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

## I.   Plaintiff's Complaints

### A.    Case No. 1102

Plaintiff's first complaint was filed on October 25, 2022.  It alleges that, on October 20, 2019, Syracuse City Court Judge Vanessa E. Bogan issued a search warrant for the apartment of Jasmine McCarthy on Jamesville Avenue in Syracuse, seeking evidence of suspected child abuse, after plaintiff and Ms. McCarthy brought their infant daughter to the emergency room with symptoms of a serious brain injury.  (Compl., No. 1102, Dkt. No.1 at 5, 9, 33).[1]  After the officers executing the search warrant found, in the rear bedroom of the apartment, a shotgun which plaintiff claims was legally owned by Ms. McCarthy, defendant Detective Pelz sought an amended search warrant from Judge Bogan.  (*Id.* at 5, 8).[2]  Plaintiff asserts that Det. Pelz[3] "falsely" stated in the supporting affidavit that plaintiff resided in the Jamesville Avenue apartment, and that he was a convicted felon who could not legally possess a firearm.  (*Id.* at 34-36).  The officers then allegedly moved the shotgun and other evidence to different locations in

---

[1] Plaintiff attached, to his complaints, various other documents, including letters of intent to sue, police photographs of the premises searched, search warrants, and various police reports related to the police investigation.  Given the inconsistent page numbering of plaintiff's complaints and the attached exhibits, the court references the page numbers assigned by the court's electronic docketing program–CM/ECF.

[2] The searching officers also found some drug paraphernalia and suspected marijuana. (No. 1102, Dkt. No. 1 at 7, 27, 28, 38, 41, 43).

[3] Plaintiff misspelled this defendant's last name as "Peltz."  The court will use the correct spelling of this defendant's last name–"Pelz."

the apartment, "planted" shotgun shells, and "staged" photographs suggesting that the shotgun, the ammunition, and a letter addressed to plaintiff at the address of the Jamesville Avenue apartment were found together in the master bedroom.  (*Id.* at 6-8, 22-24, 38, 41, 43).  Plaintiff alleges that the officers tampered with the evidence and "manufactured a crime scene" in an effort to "seal in" a criminal weapons possession charge against him.  (*Id.* at 5, 8, 9).

Plaintiff has consistently alleged that he did not reside with Jasmine McCarthy in the Jamesville Avenue apartment and was not a convicted felon.  (No. 1102, Dkt. No. 1 at 5, 9, 13, 16, 39).  He noted that the Syracuse Police ultimately concluded that there was not enough evidence to charge him (or Ms. McCarthy) with any criminal offense, and he does not allege that he was ever arrested.  (*Id.* at 8, 9, 12, 42).  Plaintiff asserts, however, that the false and misleading evidence that the defendants manufactured in an unsuccessful effort to support a criminal case against him were later used in Family Court proceedings, which, for an extended period of time, prevented plaintiff from enjoying visitation or custodial rights with respect to his daughter.  (*Id.* at 9, 12, 13).  Plaintiff further claims that the defendants violated his parental rights and those of Jasmine McCarthy by having them removed from the hospital six hours after they brought their daughter to the emergency room on October 20, 2019, which prevented them from continued contact with their infant child.  (*Id.* at 13).

Plaintiff alleges, in three causes of action, that the defendants violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments.  (No. 1102, Dkt. No. 1 at 4).  The Fourth Amendment claim is predicated on plaintiff's allegations

that, in connection with the search of Jasmine McCarthy's apartment, the police submitted tampered evidence, misleading Judge Bogan into executing the amended warrant. (*Id.* at 11). Plaintiff also alleges that the officer's conduct relating to the search violated federal and state criminal laws, and he demands the return of the property seized. (*Id.* at 9-10, 15). The plaintiff also alleges that the police violated his Sixth Amendment rights by "making it seem as if [a] crime has been committed with falsified evidence and statements." (*Id.* at 12). Although the Syracuse Police closed their criminal case, plaintiff alleges that the falsified evidence from the investigation became "the start and foundation of the family court/child protective services case" against him. (*Id.* at 12). Finally, plaintiff alleges that his Fourteenth Amendment rights were violated when the defendants "seized access to my child at the hospital without a court order and the[n] submitted false reports and evidence against me which cause[d] me to have my parental rights taken away without any due process of law for over 3 years and counting." (*Id.* at 13). Plaintiff seeks compensatory and punitive damages of $10,500,000. (*Id.* at 15).

### B.    Case No. 1164

On November 8, 2022, plaintiff filed a separate lawsuit against Assistant District Attorney ("ADA") Jarrett Woodfork and the Onondaga County District Attorney's Office ("D.A.'s Office"), alleging violations of his rights under the Fourth Amendment and 42 U.S.C. § 1986. (Compl., No. 1164, Dkt. No. 1). The complaint in Case No. 1164 alleges many of the same facts regarding the search of the Jamesville Avenue apartment that were contained in the complaint in No. 1102. (*Id*. at 6-7). The Fourth

Amendment claim is based on  ADA Woodfork's decision not to return any "weapons and guns" seized during the search.  (*Id.* at 2, 3, 5, 6).  The complaint also suggests that ADA Woodfork and the D.A.'s Office violated Section 1986 by failing to take action against the police officers involved in the search, notwithstanding the fact that plaintiff advised them of the alleged wrongdoing of the officers.  (*Id.* at 2, 3, 6).  Plaintiff demands return of all property illegally seized and $1,000,000 in damages.  (*Id.* at 4).

For the reasons stated below, the court concludes that both complaints fail to state viable claims for any violation of plaintiff's constitutional rights.  Accordingly, this court recommends that plaintiff's complaint be dismissed.

## II.   **Fourth Amendment Claims**

### A.   **Applicable Law**

Plaintiff claims that the defendants violated his Fourth Amendment rights in connection with the search of Jasmine McCarthy's apartment on October 20, 2019.[4]

---

[4] The court notes that plaintiff's Fourth Amendment claim, and any other claims based solely on the defendants' conduct on October 20, 2019, may be barred by the applicable statute of limitations.  Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions, which, in New York, is three years.  *See Owens v. Okure*, 488 U.S. 235, 250-51 (1989); N.Y. C.P.L.R. § 214(5).  Plaintiff's first complaint in this action was dated and filed on October 25, 2022, more than three years after the search on October 20, 2019.  Even if the statute of limitations has run, "the doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.'"  *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Second Circuit has cautioned against *sua sponte* dismissal on untimeliness grounds without giving the litigant notice and an opportunity to be heard.  *Abbas v. Dixon*, 480 F.3d 636, 639-40 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses.")  Accordingly, in connection with this initial review, the court will not recommend dismissal of any of plaintiff's claims based on the statute of limitations.  The plaintiff should, however, be prepared to present any facts supporting a claim of equitable tolling should the defendants elect to pursue that defense.

The standards for determining whether the Fourth Amendment rights of a civil rights plaintiff were violated are the same as those applicable to criminal defendants seeking suppression of the fruits of a law enforcement search. *Calderon v. City of New York*, 138 F. Supp. 3d 593, 604 (S.D.N.Y. 2015).

"Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause . . . ." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991). "[W]hile a party challenging a warrant on the ground that it was issued on less than probable cause bears a 'heavy burden,' . . . that burden can be met . . . [if] the affidavit on which the probable cause determination was based was knowingly or recklessly false." *Calderon v. City of New York*, 138 F. Supp. 3d at 604. A party who challenges the legality of a search warrant on this basis must show that "(1) the affiant knowingly and intentionally, or with a reckless disregard for the truth, made false statements or omissions in his application for a warrant, and (2) such statements or omissions were necessary to the finding of probable cause." *Conroy v. Caron*, 275 F. Supp. 3d 328, 346-47 (D. Conn. 2017) (citing, inter alia, *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).

"Evidence seized pursuant to a warrant does not violate the Fourth Amendment even if the warrant lacks probable cause or is technically deficient if the executing officers relied upon it in 'objective good faith.'" *Cherry v. Jorling*, 31 F. Supp. 2d 258, 268 (W.D.N.Y. 1998) (*citing United States v. Leon*, 468 U.S. 897, [919-22] (1984)). "For the good faith exception to apply, the officers who obtained the warrant must

reasonably believe that the warrant was based on a valid application of the law to the known facts." *Id.* (citing *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir. 1996). Although warrantless searches of private property are generally presumed to be unreasonable, the law recognizes certain other exceptions, for example, when the search is conducted pursuant to the consent of an authorized person. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir. 2004) (recognizing that where authorized party consents to search, "neither a warrant nor probable cause is necessary").

"To have standing to object to an entry and search of a home under the Fourth Amendment, a plaintiff must show that he had a "'legitimate expectation of privacy'" in the place searched." *Nieves v. New York City Police Dep't*, 716 F. Supp. 2d 299, 307 & n.62 (S.D.N.Y. 2010) (citing *U.S. v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).  "'This inquiry involves two distinct questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable.'" *Id.* at 307 & n.63 (citing *U.S. v. Hamilton*, 538 F.3d at 167).

## B.   Analysis

### 1.   The Search

For various reasons, plaintiff has not stated a viable Fourth Amendment claim relating to the search of Jasmine McCarthy's apartment by the defendant officers.[5]

---

[5] Plaintiff's claims relating to the search appear to be based, in part, on the officer's alleged violations of federal or state criminal statutes such as perjury or evidence tampering. (Case No. 1102, Dkt. No. 1 at 9-10).  However, plaintiff may not assert claims under Section 1983 based on criminal violations. *See, e.g., Ong v. Park Manor (Middletown Park) Rehab. &*

Plaintiff's complaint and the various documents attached thereto, document that he has repeatedly insisted that he did not reside in the Jamesville Avenue apartment where Jasmine McCarthy and his daughter lived.  (*See, e.g.*, No. 1102, Dkt. No. 1 at 5, 13, 16, 39).  Moreover, plaintiff denied ownership or possession of the key items seized in the search, including the shotgun.  (No. 1102, Dkt. No. 1 at 5, 16 ("legally owned shotgun belong[ed] to my daughter's mother")).  Thus, plaintiff, by his own admissions, lacks standing to claim that his Fourth Amendment rights were violated by the search of Jasmine McCarthy's apartment.[6]  *See, e.g.*, T*obias v. Cnty. of Putnam*, 191 F. Supp. 2d 364, 372-73 (S.D.N.Y. 2002) (Mr. Tobias, who had his own apartment in a different town, and did not live at the cottage "cannot say that he had a reasonable expectation of privacy" in the cottage); *U.S. v. Sanchez*, 419 F. App'x 27, 30-31 (2d Cir. 2011) ("Samuels's own affidavit disclaimed any expectation of privacy in his ex-girlfriend's apartment, stating that he 'do[es] not live' there, 'never lived' there, and 'did not have

---

*Healthcare Ctr.*, 51 F. Supp. 3d 319, 348 n.19 (S.D.N.Y. 2014) (allegations that defendants violated criminal statutes by submitting false statements and falsified documents, or committing perjury "cannot form the basis of a . . . § 1983 or related claim given that those statutes apply only to violations of federal constitutional rights") (collecting cases); *Patterson v. Patterson*, No. 1:16-CV-00844, 2019 WL 1284346, at *7 (W.D.N.Y. Mar. 20, 2019) ("Courts within this Circuit have accordingly held consistently that criminal charges . . . 'cannot be prosecuted by a private person.'") (collecting cases).

[6] Because plaintiff is not a licensed attorney, he may not litigate claims on behalf of Ms. McCarthy.  *See, e.g., Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (federal statute governing appearances in federal court "does not permit 'unlicensed laymen to represent anyone else other than themselves.'") (citations omitted); *DePonceau v. Pataki*, 315 F. Supp. 2d 338, 341-42 (W.D.N.Y. 2004) (pro se plaintiff did not have standing to file § 1983 complaint on behalf of other individuals, even though they had given him power of attorney, where plaintiff did not have license to practice law); *Silver v. D.C. Metropolitan Police Dept.*, 939 F. Supp. 2d 20, 21, 22 (D.D.C. 2013) (Arrestee bringing § 1983 action against police officers in connection with warrantless search of his grandmother's house could not, as a lay person, bring Fourth Amendment claims on behalf of his grandmother and uncle).

control or authority over her home and could not enter her home without her permission.' He therefore may not challenge the search of that home.'").

The police records attached to plaintiff's complaint document that Jasmine McCarthy consented to the search of her apartment (No. 1102, Dkt. No. 1 at 37, 39), which would likely make the search compliant with the Fourth Amendment even if the amended warrant was tainted by the alleged falsification of the affidavit in support of the amended search warrant. Even if Jasmine McCarthy might contest that she voluntarily consented to the search, plaintiff would not have standing to assert that challenge in support of his Fourth Amendment claim.

The court also notes that, other than identifying Det. Dallas Pelz as the affiant on the amended search warrant, the complaint does not plead any facts indicating that the other officers participating in the search knew of the alleged falsification of the affidavit or would not have relied, in good faith, on the amended warrant or the consent provided by Jasmine McCarthy. Plaintiff's names, as defendants, every officer who appears to have been involved in the search,[7] without pleading any facts indicating that the officers other than Det. Pelz were personally involved in the alleged constitutional violations relating to the search.[8] Hence, even if the plaintiff had standing to challenge

---

[7] Plaintiff purports to identify the officers involved in the search from a "CNYLEADS CS INCIDENT PAGE," (No. 1102, Dkt. No. 1 at 7, ¶ 9), which does not appear to be attached as an exhibit to the complaint. The court found no other documents attached to the complaint which indicated that defendants Demand, Henderson, or Malone were involved in the search, as plaintiff alleges.

[8] It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).

the search, his complaint fails to meet even the minimal notice pleading requirements of Fed. R. Civ. P. 8(a)[9] with respect to the Fourth Amendment claim against all but one of the officers who were involved in the search.

## 2.    Failure to Return Seized Property

In both complaints, the plaintiff has complained that the police and the District Attorney's Office refused to return certain property to plaintiff even though they determined that they lacked sufficient evidence to prosecute him.  Plaintiff denied ownership or possession of the property seized from the apartment of Jasmine McCarthy, particularly the shotgun that ADA Woodfork did not allow to be returned.[10] Based on the analysis above, plaintiff therefore lacks standing to assert claims based on the failure of the police or ADA Woodfork to return that property.

 Deprivation of property by a state actor, whether done intentionally or negligently, will not support a due process claim redressable under § 1983 if "adequate state post-deprivation remedies are available."  *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009) (*quoting Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).  Courts in the Second Circuit addressing this issue have dismissed federal claims for deprivation of property without due process of law, reasoning that New York has adequate state

---

[9] Fed. R. Civ. P. 8(a)(2)  and 8(d)(1) require that a complaint contain "'a short and plain statement of claim showing that the pleader is entitled to relief,' and that each averment be 'concise and direct.'"  *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL 1385890, at *2 (dismissing, under 28 U.S.C. § 1915(a)(3), a "complaint [which] fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual named in the caption of the complaint") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

[10] The complaint in Case No. 1164 indicates that most of Ms. McCarthy's property, other than "weapons and guns" were eventually returned to her.  (No. 1164, Dkt. No. 1 at 5, 6).

post-deprivation remedies . . . [such as] a state law claim for negligence, replevin or conversion with the Court of Claims." *Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249-50 (E.D.N.Y. 2017).

Based on plaintiff's allegations, it would appear that the failure to return Jasmine McCarthy's property by the police and ADA Woodfork were random or unauthorized acts by employees, rather than actions pursuant to an established government procedure. With respect to ADA Woodfork, the complaint states that he "interjected himself into the matter and blocked the release of the property that was already released by the Syracuse Police who obtained it illegally." (No. 1164, Dkt. No. 1 at 2). Accordingly, even if plaintiff had standing to raise a Section 1983 due process claim for deprivation of property, it would be subject to dismissal due to the availability of other adequate state post-deprivation remedies, based on the authority cited above.

## III.   Failure of the D.A.'s Office to Prosecute Officers Involved in the Search

Plaintiff alleges that ADA Woodfork and the D.A.'s Office violated his rights under 42 U.S.C. § 1986 when it failed to investigate or prosecute the officers involved in the search of the Jamesville Avenue apartment, after learning about their illegal conduct from plaintiff. (No. 1162, Dkt. No. 1 at 2, 3, 6, 7).[11] The complaint in Case No. 1162 fails to state a viable claim for relief relating to the failure of the D.A.'s Office to investigate or prosecute, under Section 1986 or otherwise.

---

[11] Plaintiff may also be asserting that the D.A.'s Office failed to intervene to prevent the allegedly unconstitutional actions of the officers in connection with the search. However, as discussed further below, plaintiff does not make any non-conclusory allegations indicating that the D.A.'s Office had contemporaneous knowledge of the officer's alleged misconduct in connection with the search, or had the ability to intervene to stop any such conduct.

## A.   <u>Applicable Law</u>

"42 U.S.C. § 1985. . . permits the recovery of damages against persons who conspire to violate a plaintiff's civil rights.  Section 1986 'provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so.'"  *DeLong v. Soufiane*, No. 05-CV-5529, 2010 WL 234781, at \*6 (E.D.N.Y. Jan. 14, 2010) (*citing, inter alia, Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).  "For this reason, a claim under Section 1986 must be predicated upon a valid Section 1985 claim."  *Id.* (citing *Brown v. City of Oneonta*, New York, 221 F.3d 329, 341 (2d Cir. 2000)).  A valid claim under Sections 1985 and 1986 must allege that "defendants engaged in a conspiracy that was motivated by invidious discriminatory animus."  *White v. Moylan*, 554 F. Supp. 2d 263, 265 n.1 (D. Conn. 2008) (citations omitted).  A complaint which contains only bare, conclusory allegations of a conspiracy, without any recitation of supporting facts which tend to show the existence of an unlawful agreement, is insufficient to establish a cause of action under Sections 1985 or 1986.  *McKnight v. Middleton*, 699 F. Supp. 2d 507, 531 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011).

"The law in th[e Second] Circuit has long shielded federal prosecutors with an absolute immunity from any damage actions based on their conduct while acting in their official capacities[,]" including in actions under Section 1985.  *Boruski v. Stewart*, 381 F. Supp. 529, 534 (S.D.N.Y. 1974); *accord*, *Willis v. Blevins*, 957 F. Supp. 690, 693-94 (E.D. Va. 2013) ("The absolute immunity enjoyed by prosecutors subject to

actions under 42 U.S.C. §§ 1983 and 1985 derives from the common-law immunity afforded to judges and extended to prosecutors acting in a quasi-judicial capacity.") (citing *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976)).  The Second Circuit has recently stated: "Our cases make clear that prosecutors enjoy 'absolute immunity from § 1983 liability for those prosecutorial activities intimately associated with the judicial phase of the criminal process.'" *Anilao v. Spota*, 27 F.4th 855, 864 (2d Cir. 2022) (citation omitted).  "The immunity covers 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Id*. (citations omitted). "For example, a prosecutor enjoys absolute immunity when determining which offenses to charge, initiating a prosecution, presenting a case to a grand jury, and preparing for trial." *Id.* (citing, inter alia, *Imbler*, 424 U.S. at 431).  Further more, "[t]he decision to investigate or prosecute a person for an alleged violation of a criminal statute is left to the discretion of the federal law enforcement agencies, and federal courts traditionally refrain from overturning, at the instance of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons against whom a complaint of criminal conduct has been made." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 84 (D. Conn. 2007); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 382-83 (2d Cir.1973) (finding no authority, in civil rights action, to compel state prosecutors to investigate and prosecute violation of New York state criminal law).

## B.    Analysis

Plaintiff's complaints claim, in conclusory fashion, that all of the officers purportedly involved in the search of the Jamesville Avenue apartment conspired to

frame plaintiff on a firearms charge by falsifying the affidavit in support of the amended search warrant and by "staging" the evidence.  The initial complaint makes one passing reference suggesting the officers were motivated by "blatant and extreme racism," without providing any further support that the alleged conspiracy was motivated by racial animus, as required to establish a violation of Sections 1985 and 1986.  (Case No. 1102, Dkt. No. 1 at 9).  Plaintiff's claim under Section 1986 requires proof that ADA Woodfork or the D.A.'s Office had contemporaneous knowledge of the wrongs the police conspired to commit in connection with the search, and that those defendants had the power to prevent those wrong and, neglected to do so.  Nothing in either complaint plausibly alleges that crucial element of a Section 1986 violation.[12] Hence, plaintiff fails to state a plausible claim under Sections 1985 and 1986.

In any event, to the extent the D.A.'s Office decided not to investigate or prosecute the police officers for the misconduct alleged by plaintiff, that decision would clearly trigger absolute prosecutorial immunity, based on the authority cited above.  Any civil rights claim predicated on the failure of the D.A.'s Office to investigate or prosecute the police officers involved in the search, whether under Section 1986 or some other authority, would not be viable.

**IV.   <u>Sixth Amendment Claims</u>**

Plaintiff acknowledges that he was never prosecuted as a result of the search and

---

[12] Plaintiff alleges that he informed the D.A.'s Office of the wrongdoing of the police but that clearly would not have happened until after the allegedly illegal search was completed.  Even if ADA Woodfork knew of the police misconduct when he blocked the return of the shotgun to Jasmine McCarthy, the failure to return that property does not support a viable civil rights claim for the reasons discussed above.  In any event, plaintiff would lack standing to assert any claim regarding the return of property owned and possessed by others.

seizure at the Jamesville Avenue apartment.  His Sixth Amendment claims is based on the use of allegedly false evidence obtained from the police search and related investigation in connection with Family Court proceedings addressing the custody of his daughter with Jasmine McCarthy.  Sixth Amendment rights are limited to criminal prosecutions[13] and do not apply to civil proceedings, such as in Family Court.  *See, e.g., Sundbye v. Ogunleye*, 3 F. Supp. 2d 254, 262 n.14 (E.D.N.Y. 1998) (claim that Sixth Amendment rights apply in Family Court proceedings is without merit because such proceedings are civil in nature); *Williams v. Savory*, 87 F. Supp. 3d 437, 451-52 (S.D.N.Y. 2015) (proceedings involving the emergency removal of children from the custody of their parent were civil in nature, not criminal, so the Sixth Amendment did not apply) (citing, inter alia, *People v. Roselle*, 84 N.Y.2d 350, 355 (1994) ("The orientation of Family Court is rehabilitative, directed at protecting the vulnerable child, as distinct from the penal nature of a criminal action which aims to assess blame for a wrongful act and punish the offender.")).

## V.   <u>Due Process Claims</u>

Plaintiff's first complaint alleges that the Syracuse Police Department defendants violated his due process rights under the Fourteenth Amendment by blocking his access to his daughter six hours after he took her to the hospital.  (No. 1102, Dkt. No. 1 at 13). He further claims due process violations because those defendants made false and misleading statements to Social Service case workers and Family Court judges, which

---

[13] The Sixth Amendment "'does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings–whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'"  *Texas v. Cobb*, 532 U.S. 162, 166-68 (2001) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)).

resulted in the entry of orders of protection against him and the denial of his parental and custodial rights.  (*Id*. at 9, 12, 13).  Plaintiff's conclusory allegations do not provide any details identifying which defendants were engaged in blocking his access to his daughter on October 20, 2019, or how that was carried out.  Nor does the complaint provide any particulars about which defendants communicated the results of their investigation of plaintiff and Jasmine McCarthy to case workers or in connection with Family Court proceedings.  Accordingly, plaintiff's first complaint fails to satisfy the minimal notice pleading requirements of Fed. R. Civ. P. 8(a).  As discussed below, there are other reasons why plaintiff may not be able to state a viable claim for due process violations under the apparent circumstances of this case.

### A.    Applicable Law

"Parents . . . have a constitutionally protected liberty interest in the care, custody and management of their children."  *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (citations omitted).  "First, both the parents and the children may have a cause of action for violation of the Fourteenth Amendment under a theory of denial of procedural due process."  *Id*.  The Fourteenth Amendment requires that, "except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected."  *Id*. (citations omitted).  The emergency exception allows "government officials [to] remove a child from his or her parents' custody before a hearing is held where there is an objectively reasonable basis for believing that a threat to the child's health or safety is imminent."  *Gottlieb v. County of Orange*, 84 F.3d 511, 518, 520 (2d Cir. 1996).

17

"Second, a parent may also bring suit under a theory of violation of his or her right to substantive due process." *Southerland*, 680 F.3d at 142. "Such a claim can only be sustained if the removal of the child 'would have been prohibited by the Constitution even had the [parents] been given all the procedural protections to which they were entitled.'" *Id.* (citations omitted). "To prevail on a substantive due process claim, a plaintiff must establish that the infringement on her liberty interest to be with her children is 'so shocking, arbitrary and egregious that the Due Process clause would not countenance it even were it accompanied by full procedural protection.'" *Hunter v. Child Protective Servs. of Niagara Cnty.*, No. 1:20-CV-18, 2021 WL 2368024, at *12 (W.D.N.Y. Feb. 22, 2021), report and recommendation adopted, 2021 WL 1996772 (W.D.N.Y. May 19, 2021) (citing *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003)).

In *American Airlines, Inc. v. Block*, the Second Circuit held that "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." 905 F.2d 12, 14 (2d Cir. 1990). *Deem v. DiMella-Deem*, 941 F.3d 618, 623-25 (2d Cir. 2019) ("*Deem I*") re-affirmed the vitality of domestic relations abstention doctrine articulated in *American Airlines*. In *Deem I* the plaintiff sued his estranged wife and others under Section 1983, for damages and injunctive relief, alleging that they conspired to maliciously prosecute him and violate his right to intimate association with his children by seeking and obtaining a temporary order of protection prohibiting him from contacting his children. *Deem I*, 941 F.3d at

18

620.   The Second Circuit concluded that the district court properly abstained under *American Airlines* because Deem's claims were, "at a minimum, on the verge of being matrimonial in nature" and that there was "no obstacle to their full and fair determination in state courts." *Id*. at 623.   In a second lawsuit, the same plaintiff again sued his estranged wife and others, for damages and injunctive relief, for obtaining an extension of the temporary order of protection from the family court, which allegedly deprived plaintiff of his due process rights by preventing him from seeing his children and gaining access to his guns. *Deem v. DiMella-Deem*, 800 F. App'x 62, 62-63 (2d Cir.), *cert. denied*, __ U.S. __, 141 S. Ct. 244 (2020) ("*Deem II*").   The Second Circuit in *Deem II* affirmed the dismissal of this action, again applying the domestic relations abstention doctrine. *Id*.

"[W]itnesses, including police officers, who testify in judicial proceedings[,] . . . 'are integral parts of the judicial process' and, accordingly, are shielded by absolute immunity." *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) (citations omitted).   Such absolute immunity applies to witnesses, "whether governmental, expert, or lay witnesses" in Family Court proceedings. *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 945 (E.D.N.Y. 1999).

B.   **Analysis**

1.   **The October 20, 2019 Incident**

As noted above, the plaintiff's initial complaint provides no details as to the circumstances by which he and Jasmine McCarthy were deprived of access to their

infant daughter on October 20, 2019,[14] or which defendants were involved in that alleged conduct.  One of the police reports attached to plaintiff's complaint documented that Patrol Officer Mitchell Anthony responded to Upstate Hospital in response to a "Child complaint" at approximately 11:31 p.m. on Saturday, October 19, 2019.  (No. 1102, Dkt. No. 1 at 40).[15]  Officer Mitchell learned, from a Child Protective Services ("CPS") case worker at the scene, that doctors had reported that plaintiff's seven-month-old daughter suffered from a brain bleed, caused by trauma, which led to a stroke.  (*Id*.)  According to the doctor, the infant's condition was symptomatic of "shaken baby syndrome" and was not consistent with the parent's statement that the child had fallen from a bed several days earlier.  (*Id*.)  Officer Anthony interviewed plaintiff and Jasmine McCarthy at the hospital and confirmed their stories regarding how their daughter had been injured.  (*Id*.)

Shortly thereafter, plaintiff and Jasmine McCarthy ended up at the Jamesville Avenue apartment, where Ms. McCarthy signed a consent to search form (at 12:07 a.m. on October 20, 2019) and where she and plaintiff were interviewed further by the police.  (No. 1102, Dkt. No. 1 at 37, 39).  The documentation attached to the complaint

---

[14] As discussed in note 4 above, any claims involving alleged police interference with plaintiff's access to his daughter on October 20, 2019, may be barred by the applicable statute of limitations because the first complaint was filed on October 25, 2022–more than three years after the relevant event.  "[C]ourts have held that the limitations period began to run on the date a parent's children were removed [from parental custody]."  *Williams v. Savory*, 87 F. Supp. 3d at 453 (citations omitted).

[15] The report is dated "20 OCT 2019," but based on the references to "Saturday" on the report, and the context provided by other police reports and documents, it is clear that Officer Mitchell's report related to investigative activity conducted during the late evening on Saturday, October 19, 2019.

20

provides no indication of how or why plaintiff and Ms. McCarthy moved from the hospital to Jamesville Avenue.

"The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Brown v. Town of E. Haddam*, 213 F.3d 625 (Table), 2000 WL 536156, at *2 (2d Cir. 2000) (quoting, with approval, *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993)).  To the extent plaintiff relies on the mere fact that the authorities conducted a child abuse investigation after learning about the nature of the severe injuries to his daughter, that would not support a viable due process claim.

Plaintiff's claim that he and Jasmine McCarthy were removed from the hospital by the police and deprived of custody of their daughter was conclusory and unsupported.[16]  Even if that claim were to be accepted, the information available to the police at that time supported an objectively reasonable basis for believing that the parents presented an imminent threat to their daughter's health and safety, justifying an emergency depriviation of parental custody without a court order.[17]  While plaintiff's complaint does not discuss the timing of the subsequent Family Court proceedings, it is clear that the Family Court soon assumed control over the issue of custody of plaintiff's

---

[16] A later police report indicated that plaintiff's infant daughter remained in the care of doctors at the hospital as of approximately 2:30 a.m. on October 20th and "appeared inanimate as she was lying on her bed." (No. 1102, Dkt. No. 1 at 39).  There is no indication that the child was not being cared for or that she was in a condition to be responsive to her parents.

[17] The evidence gather by the police was sufficiently compelling that Judge Bogan issued the original search warrant for the Jamesville Avenue apartment for evidence of child abuse. (No. 1102, Dkt. No. 1 at 33).  Even if the police separated plaintiff from her daughter, as he claims, the police conduct, under the circumstances, certainly did not "shock the conscience," as would be required to state a substantive due process claim.

21

daughter.[18]  In any event, plaintiff's first complaint does not provide sufficient information to support a plausible claim that any particular defendant deprived him of the custody of his daughter on October 20, 2019.

## 2.    The Family Court Proceedings

Plaintiff's initial complaint does not identify which of the defendant police officers provided information relating to the Family Court proceedings involving plaintiff's daughter, or how they may have done so.  To the extent police officers presented evidence as witnesses in Family Court proceedings, they would be entitled to absolute witness immunity, based on the authority cited above.  Moreover, it would appear that the Family Court could render "a full and fair determination" with respect to the custody of plaintiff's daughter.  Plaintiff provides no information suggesting that the Family Court was not able to evaluate the accuracy and credibility of any information presented by the police regarding the circumstances of the daughter's injuries and the firearm and drug-related items found in her mother's apartment on October 20, 2019.  Accordingly, any claim of plaintiff predicated on the Family Court proceedings relating to the order of protection against him and the custody of his daughter would be subject to dismissal under the domestic relations abstention doctrine, as articulated in the Second Circuit's *Deems* cases.  *See also Hunter v. Child Protective Servs. of Niagara Cnty.*, No. 1:20-CV-18, 2021 WL 2368024, at *8 (W.D.N.Y. Feb. 22, 2021) ("While plaintiff disagrees with . . . the outcome of the custody proceedings, she

---

[18] A CPS case worker was at the hospital where plaintiff's daughter was being treated before plaintiff left the hospital.  (No. 1102, Dkt. No. 1 at 40).  While it is not clear from plaintiff's complaint, CPS may have been involved in any decision to deprive plaintiff of custody of his daughter on an emergency basis, if that, in fact, was what happened.

fails to successfully allege that any obstacles prevented her from receiving a full and fair determination from the Family Court.  Thus, this Court should abstain from exercising its federal-question jurisdiction over plaintiff's claims . . ." pursuant to the domestic relations abstention doctrine), report and recommendation adopted, 2021 WL 1996772 (W.D.N.Y. May 19, 2021), appeal pending.

## VI.   **The Entity Defendants**

Departments that are merely administrative arms of a municipality do not have a legal identity separate from the municipality and may not sue or be sued, including under Section 1983.  *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. Nov. 9, 2012) (dismissing claim against the police department) (collecting cases); *Michels v. Greenwood Lake Police Dep't*, 387 F. Supp. 2d 361, 367 (S.D.N.Y. 2005) (the D.A.'s Office is not a proper party to this action, because the D.A.'s Office is not a legal entity capable of being sued under Section 1983).  Accordingly, plaintiff's claims against the Syracuse Police Department in Case No. 5:22-CV-1102 and against the Onondaga County District Attorney's Office in Case No. 5:22-CV-1164 are subject to dismissal.

Even if the plaintiff were able to substitute, as defendants, the correct municipalities for these sub-entities–the City of Syracuse and the County of Onondaga–there are additional prerequisites for suing a municipality under Section 1983.  A municipality may not be held vicariously liable for the conduct of employees on the basis of the *respondeat superior* doctrine alone.  *See, e.g., Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 548-49 (E.D.N.Y. 2004) (citing *Monell v. Dept. of Social*

*Services of City of New York*, 436 U.S. 658, 691 (1978)).  In order to establish liability of a municipality pursuant to 42 U.S.C. § 1983 for violation of civil or constitutional rights, a plaintiff must allege that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli*, 980 F. Supp. 635, 639 (N.D.N.Y. 1997); *Monell*, 436 U.S. at 694-95.  Generally speaking, a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, will not suffice to raise an inference of the existence of a custom or policy.  *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d at 549 (citing, inter alia, *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

Plaintiff's complaints do not allege any facts supporting a plausible claim of municipal liability under *Monell* for either the Syracuse Police Department or the D.A.'s Office.  Accordingly, the claims against these defendants, and the appropriate parent municipalities, if they were named, would be subject to dismissal.

## VII.  <u>Opportunity to Amend</u>

Generally, when a court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  The court concludes that any effort by plaintiff to amend the following claims would clearly be futile: (1) any claims asserted under the Sixth Amendment;[19] (2) any claims solely predicated on alleged violations of

---

[19] Plaintiff's primary Sixth Amendment claims was asserted in Case No. 1102, but an attachment to the complaint in Case No. 1164 also makes a reference to the Sixth Amendment. (No. 1164, Dkt. No. 1 at 6).

federal or state criminal statutes by defendants in connection with the October 20, 2019 search; and (3) any claims asserted in Case No. 1164 predicated on the failure of the D.A.'s Office to investigate or prosecute the Syracuse Police defendants for alleged misconduct relating to the October 20, 2019 search.  The court, therefore, recommends that any such claims be dismissed with prejudice.  The Syracuse Police Department and Onondaga County District Attorney's Office must be dismissed as defendants, because they are municipal sub-entities not subject to suit, without prejudice to possible amendment to assert claims not dismissed with prejudice against the municipalities, the City of Syracuse and the County of Onondaga.

Otherwise, the court doubts that plaintiff can amend his complaint to state any other plausible claims for relief that would not subject to dismissal on the merits or based on standing, immunity, or abstention issues.  However, given that one of the reasons for dismissal of some of these claims was the insufficiency of plaintiff's pleading, I will recommend providing plaintiff with an opportunity to amend to correct, to the extent possible, the various deficiencies in the other claims, as identified in this opinion.  HOWEVER, PLAINTIFF SHOULD NOT ATTEMPT TO AMEND HIS COMPLAINT UNTIL DISTRICT JUDGE D'AGOSTINO RULES ON THE COURT'S REPORT AND RECOMMENDATION.  ANY MOTION TO AMEND FILED PREMATURELY WILL BE STRICKEN BY THE COURT.  Plaintiff may, however, otherwise object to the Report-Recommendation, as indicated below.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP is **GRANTED only for**

**purposes of filing and any appeal, unless the trial court certifies in writing that the appeal is not taken in good faith per 28 U.S.C. 1915(a)(3)**, and it is

    **RECOMMENDED**, that the following claims in Case Nos. 5:22-CV-1102 and 5:22-CV-1164 be **DISMISSED WITH PREJUDICE** pursuant to **28 U.S.C. § 1915(e)(2)(B)(i)-(iii)**:  (1) any claims asserted under the Sixth Amendment; (2) any claims solely predicated on alleged violations of federal or state criminal statutes by defendants in connection with the October 20, 2019 search; and (3) any claims asserted in Case No. 1164 predicated on the failure of any defendant to investigate or prosecute the Syracuse Police defendants for alleged misconduct relating to the October 20, 2019 search, and it is

    **RECOMMENDED**, that the Syracuse Police Department and the Onondaga County District Attorney's Office be **DISMISSED WITH PREJUDICE** pursuant to **28 U.S.C. § 1915(e)(2)(B)(i)-(iii)**, and it is

    **RECOMMENDED**, that the other claims and defendants in the complaints in Case Nos. 5:22-CV-1102 and 5:22-CV-1164 be **DISMISSED WITHOUT PREJUDICE** pursuant to **28 U.S.C. § 1915(e)(2)(B)(i)-(iii)**, and it is

    **ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

    Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: November 15, 2022

Andrew T. Baxter
U.S. Magistrate Judge